

Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 03/21/12

# IN THE UNITED STATES BANKRUPCTY COURT
# MIDDLE DISTRICT OF TENNESSEE

IN RE:       )
          )  **Case No. 11-12310**
**ANNA SHENEATER GIFT,**  )  **Chapter 13**
  **Debtor.**     )  **Randal S. Mashburn**
          )   **(Sitting by interchange for Keith M. Lundin)**

## Memorandum Opinion

This matter is before the court on the Metropolitan Government of Nashville and Davidson County's ("Metro") Amended Objection to Confirmation of Anna Sheneater Gift's ("Debtor") Chapter 13 Plan. More specifically, Metro, as an oversecured creditor, objects because the debtor's plan does not provide for post-petition interest (12%) and post-petition penalty (6%) (for a total of 18% post-petition) on its tax claim pursuant to 11 U.S.C. § 506, 11 U.S.C. § 511, and Tenn. Code Ann. § 67-5-2010 ("T.C.A."). The debtor argues that only the 12% interest rate should be applied. For the reasons contained herein, the court GRANTS IN PART AND DENIES IN PART Metro's objection to confirmation. The following constitutes the Court's findings of fact and conclusions of law.

## I.  Undisputed Facts

The parties submitted this matter to the Court upon stipulations, and no factual matters remain in dispute. Both parties agreed that no witnesses were required, and

1

that they would rely upon the court record and their legal arguments. The relevant facts are limited and very straightforward.

The debtor filed a voluntary petition under Chapter 13 of Title 11 of the U.S. Code on December 13, 2011. Schedule E, attached to the debtor's petition, listed a priority claim held by Metro in the amount of $6,873.14. The debtor's chapter 13 plan provided for payment of the Metro claim in full as a priority claim.

The bankruptcy filings reflect that the debtor's assets significantly exceed her liabilities. Her summary of schedules shows assets totaling $117,725 and liabilities of less than $20,000. Thus, this is an unusual case involving a clearly solvent debtor – a fact that will become particularly important in one aspect of the analysis of the issues. As might be expected with a Chapter 13 case involving a solvent debtor, the debtor's plan provides for payment of 100% of allowed unsecured claims.

On January 9, 2012, Metro filed an objection (and an amended objection) to the debtor's plan, asserting Metro's secured claim was entitled to be paid at 18% interest. Also on January 9, 2012, Metro filed two proofs of claim. As amended on the same day, the Metro claims were for $1,188.41 for 2011 real property taxes and $8,734.93 for 2006 through 2010 property taxes. The proofs of claim both assert that the claims are secured by the debtor's real property valued at $115,100.

The parties agree that Metro is an oversecured creditor, with a statutory lien for delinquent property taxes. The debtor concedes Metro's right to post-petition interest, **see United States v. Ron Pair Enterprises**, 489 U.S. 235 (1989), but contests Metro's claim for statutory penalties. The parties ask the court to determine if the debtor's plan

2

should provide 12% interest as proposed by the debtor, or the combined 18% rate (12% default interest, plus 6% penalty) that Metro seeks.

## II. Analysis

Based on the language in T.C.A. § 67-5-2010, Metro's lien for taxes also secures its right to payment of interest, penalties and costs.[1] In other words, Metro has a non-consensual lien imposed by state statute, and Metro asserts that all elements of the claim are covered by the lien. The dispute over confirmation arises because the debtor has not provided for the penalty reflected in the statute.

---

[1] TCA § 67-5-2010 provides:
§ 67-5-2010. Penalty and interest rate

(a)(1) To the amount of tax due and payable, a penalty of one-half of one percent (0.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month, except as otherwise provided in regard to municipal taxes. Any county having a population in excess of seven hundred thousand (700,000), according to the 1980 federal census or any subsequent federal census establishing tax due dates other than the first Monday in October in each year, in accordance with § 67-1-701(a), shall have the authority to establish the date that interest and penalty shall begin to accrue as the date of delinquency in lieu of March 1.

(2) The rate of penalty and interest as provided in this section may be reduced to an amount not less than twelve percent (12%) per annum in the aggregate, upon approval by a two-thirds ( 2/3 ) vote of the appropriate local governing body that levied such taxes, in any county having a population of not less than twenty-four thousand six hundred (24,600) nor more than twenty-four thousand seven hundred (24,700), according to the 1980 federal census or any subsequent federal census.

(b) In all instances in which current municipal taxes are collected by the county trustee, the following provisions and rules for the collection of delinquent taxes that may be due to the municipalities and none other shall prevail and obtain, anything in this chapter to the contrary notwithstanding:

(1) The taxes levied and assessed by such municipalities shall become due and delinquent on the date as now provided by existing laws; and

(2) If such municipal taxes are not paid on or before the date fixed for the delinquencies thereof, to the amount of tax due and payable, a penalty of one half of one percent (0.5%) and interest of one percent (1%) shall be added on March 1, following the tax due date and on the first day of each succeeding month.

3

## A. Claim Allowance/Disallowance

The filing and allowance of claims is governed by provisions of Chapter 5 of the Bankruptcy Code applicable to all actions filed under Chapters 7, 11, 12 and 13. 11 U.S.C. § 103(a). Specifically, section 502(a) of the Code provides: "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." **See In re Chavis**, 47 F.3d 818 (6th Cir. 1995). "Claim" is a defined term in the Code:

> (5) The term "claim" means--
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**11 U.S.C. § 101(5).**

Section 502(b) requires the court to "determine the amount of [a] claim. . . as of the date of filing of the petition, and [to] allow such claim in such amount, except to the extent that" it fits within a list of exceptions, including the disallowance of a claim for unmatured interest. **11 U.S.C. § 502(b)(2).** Section 502 controls the overall question of whether a creditor's bargained for (or statutorily created) right to payment will be allowed or disallowed. **See Gencarelli v. UPS Capital Business Credit**, 501 F.3d 1, 6 (1st Cir. 2007). Section 502(b) does not address the extent an allowed claim is an allowed *secured* claim under § 506(a). **In re Bennett,** 312 B.R. 843 (Bankr. W.D. Ky. 2004) (citing **In re Hill**, 304 B.R. 800, 804 (Bankr. S.D. Ohio 2003)).

Section 506 provides the roadmap for determining whether and to what extent a claim is secured. A secured claim is defined by § 506(a)(1) as "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... to the extent of the value of such creditor's interest in the estate's interest in such property." **11 U.S.C. § 506(a)(1)**. Section 506(b) provides:

> (b)  To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

**11 U.S.C. §506(b).**  "Section 506(b) explicitly allows oversecured creditors to recover postpetition interest[ ] on their claims, thereby exempting them from the strictures of § 502(b) to the extent their claims are oversecured." **In re Dow Corning Corp.**, 456 F.3d 668, 681 (6th Cir. 2006).

Thus, the oversecured creditor, having a claim allowed in an amount pursuant to section 502 as of the date of the petition, looks to section 506(b) for what amounts may be added on because it is oversecured.  Because Metro's claim is measured "as of the date of the filing of the petition," Metro is entitled to interest, penalties, attorney fees, and costs that accrued prepetition as part of their allowed secured claim pursuant to section 502(b)(2).  Postpetition, interest, fees, costs, and charges are prioritized for secured treatment only if authorized under 11 U.S.C. § 506(b). **Bondholder Comm. v. Williamson County (In re Brentwood Outpatient, Ltd.),** 43 F.3d 256, 263 (6th Cir.1994) (section 506[b] applies only to post-petition secured amounts); **Rushton v. State Bank of Southern Utah (In re Gledhill),** 164 F.3d 1338, 1340 (10th Cir.1999) (same); **In re Leatherland Corp.,** 302 B.R. 250, 257–258 (Bankr. N.D. Ohio 2003)

(same).  In order to set Metro's claim for purposes of confirmation, the court must determine where postpetition penalties fit in, if at all, under this framework.[2]

## B.  Section 506(b) Analysis

To the extent that Metro's "penalty" is a fee, cost or charge, it is subject to the "reasonableness" qualifier in section 506(b) to determine its priority.  If the penalty is nothing more than "default interest" with veiled nomenclature, then the interest rate is set by 11 U.S.C. § 511 by reference to T.C.A. § 67-5-2010.[3]  Finally, to the extent the penalty is not interest and also cannot be categorized as a "fee, cost or charge," then it is not entitled to secured treatment at all.  Thus, it is critical to determine how Metro's "penalty" fits within the parameters of section 506(b).

## C.    The *Brentwood Outpatient* Cases

**Bondholder Comm. v. Williamson County (In re Brentwood Outpatient, Ltd.),** 43 F.3d 256 (6th Cir.1994) involved a chapter 11 debtor that owed delinquent property taxes that accrued postpetition.  Like the present case, all parties agreed that

---

[2] Courts across the country have exhaustively investigated the legislative history of section 506(b).  Most all have concluded that the legislative history offers little insight into whether Congress intended section 506(b) to codify pre-Code law (pre-1978) disallowing postpetition interest on oversecured tax liens or to change it completely.

[3] The penalty sought by Metro could debatably be nothing more than a higher interest rate designed to compensate Metro for the higher costs of managing a default in tax payments.  While the 12% statutory interest compensates for the time value of money for the unpaid taxes, arguably the 6% "penalty" is the charge for the increased cost of dealing with a delinquent taxpayer.  Although called a penalty by statute, in reality it could be considered nothing more than a default interest provision.  If that were the case, then courts would most likely be constrained by section 511 as to the interest rate applied.

It may be that this interpretation is foreclosed in light of the Sixth Circuit's decision in **Brentwood Outpatient** (discussed **infra**).  The Sixth Circuit in that case reluctantly reached the decision it did based on the absence of a provision in section 506 for nonconsensual lienholders, but had the opportunity at that time to construe the County's penalty as default interest, and did not do so.  If the Sixth Circuit did not take that route to reach the decision it clearly wanted to reach, then by implication, this court may be so constrained.  **But see In re Collier**, 2009 WL 5449150 (Bank. N. D. Cal. 2009) (noting California legislature enacted state law to treat penalties as interest when a debtor files bankruptcy, but ultimately holding that a penalty was either interest or a fee cost or charge that must be provided for in the debtor's chapter 13 plan).

For reasons explained herein, this Court gives credence to the term "penalty" and treats it as being punitive in nature rather than merely a component of statutory interest.

6

the County was oversecured. The Chapter 11 plan provided for the County to be paid in full on the effective date of the plan. After confirmation of the plan, the Bondholder Committee paid the base tax, plus prepetition and postpetition interest, but objected to payment of the statutory penalties, attorneys' fees, and costs. In that case, the precise issue was:

> We must decide whether in a Chapter 11 proceeding a local government may collect statutory (1) costs and attorneys' fees and (2) penalties of 1/2% per month which accrue on delinquent property taxes after the filing of the bankruptcy petition; and (3) whether any allowable penalties, costs, and fees are due up to the time the delinquent property taxes are paid or only up to the effective date of the Chapter 11 plan.

**43 F.3d at 258**. The Sixth Circuit held that section 506(b) as it was worded at that time, addressed only consensual lienholders, and that it seemed odd that it should be dispositive of a case involving a nonconsensual claimholder. However, the historical development of the law in this area convinced the Court that section 506(b) did indeed answer the question:

> Early in this century Justice Holmes wrote for a unanimous Supreme Court that the United States had adopted, along with the basic English bankruptcy system, the "English rule" that even secured claims in bankruptcy were not entitled to postpetition interest. **Sexton v. Dreyfus**, 219 U.S. 339 (1911). The English rule was thought to serve the interest of providing a "certain date" for winding up the affairs of the bankrupt and distributing the estate. . . .In a case at midcentury involving a state tax claim, however, the Court found that "[t]he long-standing rule against post-bankruptcy interest [still] appears implicit in our current Bankruptcy Act." **New York v. Saper**, 336 U.S. 328 (1949). While taxes received preferred treatment under the 1898 Bankruptcy Act**,** Justice Jackson wrote in 1949 in **Saper** that "by the 1926 amendment and the [1938] Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest."
> . . .
> [C]aselaw twists and turns and makes exceptions. In the decades leading up to the comprehensive Bankruptcy Reform Act of 1978, many courts developed an exception to allow creditors with consensual oversecured

7

liens to collect postpetition interest, fees, and costs, to the extent provided in the security agreement.

. . .

The Courts of Appeals which addressed this issue prior to the enactment of the 1978 Code all followed this rule. . . Early decisions under the 1978 Code were mixed, with some awarding postpetition interest on nonconsensual liens, and others following the traditional rule. However, it is notable that courts on both sides of this question typically began their analysis with the traditional rule and then found that Congress in enacting § 506(b) either codified by implication the traditional denial of postpetition additions to nonconsensual claims or modified that rule to the extent of allowing postpetition interest only. . . .

The Supreme Court has recently settled this difference of opinion among the circuits. **In United States v. Ron Pair Enters**., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

**43 F.3d at 260-61** (some citations omitted).

**Ron Pair** held that oversecured creditors are entitled to postpetition interest without qualification under section 506(b). **United States v. Ron Pair Enters., Inc.** 489 U.S. 235 (1989). "Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose." **Id.** at 241.

In light of **Ron Pair**, the Sixth Circuit reasoned:

A "consensual" claim is one arising from a negotiated agreement, such as a security agreement giving the creditor an interest in specified collateral. A "nonconsensual" claim is one arising without a specific agreement, such as a tax claim arising by statute or a judgment lien resulting from litigation.[ ] If § 506(b) controls this case, the result is that a commercial creditor is placed in a better position for the purposes of bankruptcy than a state in its taxing authority. This seems incongruous to us because under the construction given by the courts below a bank or other lender which enters into a security agreement can collect its costs and fees as itemized in the agreement, but a state entitled by statute to collect costs and fees is denied them because they arise by operation of law and not under an agreement. Both the policy and the result clearly seem unwise. However, a historical inquiry into this area of bankruptcy law convinces us that such is in fact the case and that like the courts below we are constrained to so hold.

8

**43 F.3d at 259-60**. The Court reluctantly concluded that the only allowable postpetition addition for nonconsensual lienholders was interest based on the Supreme Court ruling in **Ron Pair** and § 506(b).

The Sixth Circuit opinion in **Brentwood Outpatient** was rendered more than a decade before the law was changed to allow nonconsensual lienholders to tack on post-petition fees, costs, or charges to a claim. Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, recovery of postpetition interest, fees, costs, or charges was only in the context of consensual liens. BAPCPA amended section 506(b) by adding "or State statute," thereby effectively putting consensual and nonconsensual liens on a level playing field. In short, the primary ruling in **Brentwood Outpatient** was rendered moot by the legislative changes, but it nevertheless provides significant guidance to the issue this Court is now asked to address.

The Sixth Circuit's decision in **Brentwood Outpatient** was appealed from a decision by Judge Lundin in the bankruptcy court. Judge Lundin held that "penalties are not 'fees, costs, [or] charges' for purposes of § 506(b)." 134 B.R. 267, 271 (Bankr. M.D. Tenn. 1991), **aff'd,** 152 B.R. 727 (M.D. Tenn. 1993), **rev'd,** 43 F.3d 256 (6th Cir. 1994). Even after twenty years, his decision most directly addresses the precise issue now before this Court, and that aspect of his decision was not directly overruled by the Sixth Circuit. To the contrary, some of the Sixth Circuit's decision seems to approve of Judge Lundin's definitional interpretation of the word "penalty" in the context of section 506(b). Even though the primary rulings in the **Brentwood Outpatient** cases have been rendered inapplicable by the legislative changes in 2005, the analysis in both decisions is quite persuasive.

9

Judge Lundin found that the drafters of the Code knew how to use and distinguish between fees, costs, charges, and penalties and did so elsewhere in the Bankruptcy Code, and the entire United States Code.

Specifically, Judge Lundin held:

> The legislative history to § 506(b) does not reveal that "fees, costs [or] charges" were intended to include "penalties." The drafters of the Bankruptcy Code elsewhere used the words "penalties," "fees," "costs" or "charges" as if their meanings are distinct. **See, e.g., 11 U.S.C. § 107(a)** (access to court records without "charge"); **11 U.S.C. § 322(c)** (trustee not liable personally for "penalty or forfeiture"); 11 U.S.C. § 328(a) ("contingent fee"); **28 U.S.C.S. § 1930** (Law.Co-op.1989) (bankruptcy "fees"); **28 U.S.C.S. § 1930** note on Bankruptcy Court Fee Schedule 819 (Law.Co-op.Supp.1991) ("The clerk shall assess a charge of up to three percent....") (emphasis added); **11 U.S.C. § 507(a)(7)(G)** ("the actual, necessary costs"); **11 U.S.C. § 503(b)(1)(C)** ("any fine, penalty"); **11 U.S.C. § 503(b)(6)** ("the fees and mileage"); **11 U.S.C. § 505(a)** ("the amount ... of any ... penalty"); **11 U.S.C. § 507(a)(1)** ("any fees and charges"); 11 U.S.C. § 726(a)(4) ("fine, penalty, or forfeiture"). **See also Fed.R.Bankr.P. 7054(b)** ("The court may allow costs....").
> . . .
> In many other contexts, Congress has recognized that "penalties" are different from "fees", "costs" or "charges." **See, e.g., 5 U.S.C.S. § 551(10)** (Law.Co-op.1989) ("sanction" for purposes of the Administrative Procedure Act includes "imposition of penalty or fine;" assessment of costs, charges, or fees are separately allowed); **16 U.S.C.S. § 810(b)** (Law.Co-op.1978) ("charges and penalties" with respect to licensees under Federal Power Act) (emphasis added); **22 U.S.C.S. § 4209** (Law.Co-op.1982) (collection of unlawful charges and penalties by consular officers); **43 U.S.C.S. § 465** (Law.Co-op.1980) (charges and penalties payable to the Secretary of Interior); **43 U.S.C.S. § 478** (Law.Co-op.1980) (construction charges and "a penalty of [one] per centum thereof" payable by any water right applicant or entryman) (emphasis added); **47 U.S.C.S. § 205** (Law.Co-op.1981) (charges and penalties payable to Federal Communication Commission).

**134 B.R. at 271-73.** Furthermore, a penalty is inherently different from a fee, cost, or charge:

> The dictionary definitions of these words are dissimilar. "Penalties" conventionally include some concept of punishment. BLACK'S LAW DICTIONARY 1290 (4th ed. rev.1968). "Charges" involve ordinary duties, burdens or obligations. BLACK'S at 294–95. A "fee" usually includes

compensation for goods or services. BLACK'S at 740–41. "Costs" typically include reimbursement of expenses to an officer or agency. BLACK'S at 415–16.

**Id.** Judge Lundin concluded that section 506 is not a source for oversecured creditors to recover penalties. Ultimately, he also found that no "applicable law" disallowed claims for tax penalties, and it was on this specific ruling that the Sixth Circuit reversed:

> The bankruptcy court suggested that § 506(b) "does not address penalties," **Id**. at 273, and concluded from this silence that the section does not govern the allowability of penalties. The court therefore ruled that the penalties were an allowable claim. Because of our discussion above, in which we found that no postpetition additions to claims are allowable in Chapter 11 cases except as provided by § 506(b), we draw the opposite conclusion-that penalties which accrue postpetition are not allowed to a nonconsensual oversecured claim in bankruptcy

**43 F.3d at 263**.

The 2005 Amendments give nonconsensual lienholders equal treatment to consensual lienholders, thereby removing the obstacle that prevented the Sixth Circuit from awarding a county tax lienor's claim for costs and attorney fees in **In re Brentwood Outpatient, Ltd.**, 43 F.3d 256 (6th Cir. 1994). Presumably the Sixth Circuit would have treated nonconsensual lienholders the same as consensual lienholders if section 506(b) had so permitted at the time. They did not address the nature of a penalty, but do not appear to have disagreed with Judge Lundin's decision below that a penalty is not a fee, cost, or charge.

Finding that a penalty is not provided for in section 506(b) and therefore not part of an oversecured creditor's postpetition claim is also consistent with the general jurisprudence that awards creditors compensatory amounts, but disallows punitive amounts that most likely are sought at the expense of other creditors. The Sixth Circuit seemed to be persuaded by the logic in Judge Lundin's opinion that it would be contrary

to Congressional intent to allow a claim component that is punitive rather than compensatory. The Sixth Circuit indicated in footnote 5 of **Brentwood Outpatient** the following sentiment:

> We need not decide today . . . whether "penalties" are in the category of "fees, costs, or charges" created by § 506(b). See Judge Lundin's thorough discussion, **Brentwood Outpatient**, 134 B.R. at 272-73. It may be that Congress did not allow for penalties in § 506(b) precisely because they are punitive rather than compensatory.

**43 F.3d at 262 n.5.; see also In re Schwegmann Giant Super Markets**, 287 B.R. 649 (E.D. La. 2002) (prepayment penalty was punitive rather than compensatory and disallowed for oversecured creditor under section 506(b) as unreasonable "fee").

The Court finds that the term penalty has a distinct meaning that does not properly fit within the parameters of "fees, costs, or charges."

### D. Cases Cited by Metro

Metro contends that "every circuit that examined the issue has determined, either expressly or by implication, that a penalty is indeed a 'fee, cost, or charge.'" None of the cases cited by Metro serve as binding precedent, and this Court finds each case distinguishable. In fact, none of the circuit cases directly address the precise issue, and most predate the 2005 BAPCA amendment to section 506(b).[4] The closest Metro comes is **Gencarelli**.

---

[4] **In re Welzel, 275 F.3d 1308, 1319 (11th Cir. 2001)** involved a chapter 7 case and the issue was whether unreasonable attorney fees should be allowed or disallowed, but there was no discussion about whether a penalty is a fee, cost, or charge under section 506(b). In **City of Farmers Branch v. Pointer (In re Pointer), 952 F.2d 82, 89-90 (5th Cir. 1992)** the Fifth Circuit found meritless the taxing unit's argument that it was entitled to fee, costs, and penalties because it was not a consensual lienholder. Just like in **In re Parr Meadows Racing Ass'n**, 880 F.2d 1540, 1546 (2d Cir. 1989) the court in **Pointer** did not address the direct issue of whether a penalty was a fee, cost, or charge under section 506(b) because the consensual versus nonconsensual lienholder issue was dispositive of the case. Both courts found that because the taxing authorities were nonconsensual lienholders, the tax claimants could not recover postpetition interest, fees, costs, charges or penalties. Metro also relies upon the Fourth Circuit's case in **Mack Fin. Corp. v. Ireson, 789 F.2d 1083 (4th Cir. 1986)** wherein the court found

The situation before this Court is clearly different from the facts facing the court in **Gencarelli v. UPS Capital Bus. Credit**, 501 F.3d 1, 5 (1st Cir. 2007). Most importantly, the First Circuit case assumed that the contractual prepayment penalty was a "charge" because the issue was apparently not contested by the parties. Also, a prepayment penalty in a contractual setting, arguably reflecting a charge or cost of a lender's lost opportunity to collect future interest, differs substantially from a statutorily imposed penalty for failing to pay a tax. **See, e.g., In re Ridgewood Apts. of Dekalb County, Ltd.,** 174 B.R. 712, 720 (Bankr. S.D. Ohio, 1994) (finding "[t]he clear purpose for a prepayment penalty is to compensate the lender for the risk that market rates of interest at the time of prepayment might be lower than the rate of the loan being prepaid.")[5]; **In re Bair**, 302 B.R. 564, 566 (Bankr. N.D. Ohio 2003) (holding "it is the general rule that the purpose of tax penalties is "to punish those who fail to abide by the taxing structure, and to deter those who might be inclined to avoid tax payment"). **Gencarelli** and the other cases are unpersuasive to Metro's cause.

### E. Conclusion that Penalty Is Not Covered by Section 506(b)

This Court finds that consistency in the law is best achieved in keeping with Congress' apparent attempt to treat consensual and nonconsensual lienholders equally, but also to recognize the historical and logical distinction between a true penalty and

---

a delinquency charge to be a "charge" subject to the reasonableness qualifier in section 506(b). The Fourth Circuit used "charges" and "penalty" interchangeably but, it is clear that the amounts at issue were "late charges" under a contract. Although the cases are indirectly relevant, none provide the guidance given by the **Brentwood Outpatient** decisions.

[5] A few cases have discussed the treatment of prepayment penalties under section 506(b). In general, a prepayment premium has been recognized as encompassed in the term "charges." **See, e.g., In re Outdoor Sports Headquarters, Inc.**, 161 B.R. 414, 424 (Bankr. S.D.Ohio 1993); **Imperial Coronado Partners, Ltd. v. Home Fed. Savs. & Loan Ass'n (In re Imperial Coronado Partners, Ltd.)**, 96 B.R. 997, 1000 (9th Cir. BAP 1989) (prepayment premium is clearly a charge provided for under the agreement under which such claim arose); **In re Premier Entertainment Biloxi LLC**, 445 B.R. 582 (Bankr. S. D. Miss. 2010) (citing **Outdoor Sports** and **Imperial Coronado Partners**).

various other fees, costs, and charges. The Court concludes that the penalty sought by Metro is not a fee, cost, or charge under section 506(b). While there are some decisions that provide some general support for Metro's position in connection with other somewhat similar settings,[6] no controlling precedent constrains this court to hold that a penalty is a fee, cost, or charge, particularly where it is established by statute as a "penalty." To the contrary, the much more persuasive, and perhaps binding, case law on this issue is the combination of Judge Merritt's and Judge Lundin's decisions twenty years ago. 134 B.R. 267 (Bankr. M.D. Tenn. 1991), **aff'd,** 152 B.R. 727 (M.D. Tenn. 1993), **rev'd,** 43 F.3d 256 (6th Cir.1994).

Reading the two cases together, and taking into account the evolution of the law surrounding section 506(b), the result is that consensual and nonconsensual oversecured claimholders are entitled to tack on interest and reasonable fees, costs, and charges. The Court finds that this is an exclusive list, not merely an illustrative one. Penalties are NOT included in that list, and therefore were not intended by Congress to

---

[6] **See, e.g., In re Collier**, 2009 WL 5449150 (Bankr. N.D. Cal. Jan. 5, 2009) (finding that penalties may not qualify as "fees" or "costs," but qualify as "charges."). In this unpublished decision, the bankruptcy court found a statutory tax penalty was a "charge" under section 506. However, the court's ruling was based upon a California state statute that treated penalties as an interest component when a debtor files bankruptcy. Tennessee does not have a similar statutory provision. **See also** footnote 3 **supra.**

If a penalty is akin to default interest in the consensual lien setting, it has also been found to be a charge:

> Default interest is instead designed to reimburse creditors for "extra costs incurred after default." **In re Consol. Props. Ltd. P'ship**, 152 B.R. 452, 455 (Bankr. D. Md. 1993); **see also In re Vest Assocs.**, 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998). Default interest, then, is not true interest at all. It is a form of late charge and thus is a "charge" for purposes of section 506(b). **See Fischer Enters., Inc. v. Geremia (In re Kalian)**, 178 B.R. 308, 316–17 (Bankr. D.R.I. 1995) (deeming default interest to be a "charge"); **see also Consol. Props.**, 152 B.R. at 455 (noting that default interest is "more in the nature" of a charge); **but see 4 A. Resnick & H. Sommer, Collier on Bankruptcy ¶** 506.04[2][b][ii] at 506–112 (15th rev. ed. 2004) (stating that "[i]n general, a default rate of interest is properly a form of interest").

**In re SW Hotel Venture, LLC,** 460 B.R. 4, (Bankr. D. Mass., 2011).

be part of a consensual or nonconsensual oversecured lienholder's postpetition claim. Ruling as Metro urges, that the penalty is a cost, is contrary to the spirit and implications of the two **Brentwood Outpatient** decisions and the 2005 amendment to § 506(b).[7]

### F.  Other Issues Affecting Metro's Claim

### 1.  Section 506(b) Ceases to Apply at Confirmation

Section 506(b) operates only through confirmation of the debtor's chapter 13 plan.  As the Eleventh Circuit recently recognized, "[e]very circuit that has discussed the temporal aspect of Section 506(b) relies on the Supreme Court's statement in **Rake** that Section 506(b) applies only from the date of filing through confirmation."  **First United Sec. Bank v. Garner (In re Garner)**, 663 F.3d 1218, 1220 (11th Cir. 2011). **See also Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition,** § 116.1, at ¶ [8], Sec. Rev. June 7, 2004, www.Ch13online.com (agreeing). **See First United Sec. Bank v. Garner (In re Garner),** 663 F.3d 1218 (11th Cir. 2011) (**citing Rake v. Wade**, 508 U.S. 464 (1993), and **Telfair v. First Union Mortgage Corp.**, 216 F.3d 1333 (11th Cir. 2000) (finding section 506(b) applies only through confirmation and oversecured creditor entitled to postpetition interest at contract rate, costs and fees as part of the secured claim until confirmation). **In re Hoopai,** 581 F.3d 1090 (9th Cir. 2009**)** (holding "Section 1325(a)(5)(B)(ii) is more specific than § 506(b) and the cutoff date for accrual of contract interest is effective date of plan and that every circuit that has addressed the issue has followed the Court's statement that § 506(b) governs fees only until the confirmation or effective date of the plan").  As a result, even in the case of a

---

[7] The Court's finding supports the statutory construction maxim **_expressio unius est exclusio alterius_**. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." **TRW Inc. v. Andrews**, 534 U.S. 19 (2001) (quoting **Andrus v. Glover Const. Co.,** 446 U.S. 608, 616-17 (1980)).

solvent debtor, penalties that accrue post-confirmation need not be provided for in the debtor's chapter 13 plan to provide the present value of Metro's allowed claim. 11 U.S.C. § 1325(a)(5)(B)(ii).

Thus, for purposes of setting Metro's oversecured claim for payment at confirmation, the accumulated pendency interest, reasonable costs, fees, and charges become a part of the allowed secured claim, and the plan must provide for payment of the present value of such allowed claim as of the effective date of the plan. **11 U.S.C. § 1325(a)(5)(B)(ii)**.

### 2. Interest Rate

Even though there does not appear to be a dispute about the interest rate that will be applied to the non-penalty portion of Metro's claim, a brief discussion of that issue may be needed to assure no lingering matters that need to be addressed by the Court.

Section 506(b) defines the allowed claim of an oversecured creditor, but treatment of that claim after confirmation is governed by section 1325. That section provides:

(a) ... the court shall confirm a plan if-

(5) with respect to each allowed secured claim provided for by the plan-

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

16

(C) the debtor surrenders the property securing such claim
to such holder;

**11 U.S.C. § 1325(a).**  Section 1325(a)(5)(B)(ii) requires that the debtor's plan provide

Metro with the present value of the amount of the allowed claim.

   Although the right of an oversecured creditor to claim interest is established in

section 506(b), that section of the Code is silent regarding what interest rate the creditor

may charge and on what amounts the creditor may calculate interest. Prior to the

enactment of section 511 as part of the BAPCPA amendments, courts applied **Till v.**

**SCS Credit Corp**., 541 U.S. 465 (2004) to both consensual and nonconsensual liens

under section 1325(a)(5)(B)(ii) to set interest rates.

   As the bankruptcy court explained in **In re Jones**, 368 B.R. 602 (Bankr. S.D.

Tex. 2007) the rules have changed for tax claims after BAPCPA:

> For purposes of tax claims, it appears that Congress intended to remove
> the bankruptcy court's equitable discretion under **Till** to determine an
> appropriate interest rate on a case-by-case basis and replace it with a
> uniform rate applicable to all tax claims. BAPCPA introduced new § 511,
> which is titled "Rate of interest on tax claims" and states that:
>
> > (a) If any provision of this title requires the payment of
> > interest on a tax claim or an administrative expense tax, or
> > the payment of interest to enable a creditor to receive the
> > present value of the allowed amount of a tax claim, the rate
> > of interest shall be the rate determined under applicable
> > nonbankruptcy law.
> >
> > (b) In the case of taxes paid under a confirmed plan under
> > this title, the rate of interest shall be determined as of the
> > calendar month in which the plan is confirmed.
>
> The plain meaning of legislation should be conclusive, except in the rare
> cases [in which] the literal application of a statute will produce a result
> demonstrably at odds with the intentions of its drafters." **Ron Pair**, 489
> U.S. at 242, 109 S.Ct. 1026. The plain meaning of § 511 is unambiguous:
> the bankruptcy court must refer to state law and may no longer use its

equitable powers to alter the interest rate on a tax claim from the rate set forth under the applicable state law. See 4 COLLIER ON BANKRUPTCY ¶ 511.01 ("The purpose of section 511 is to establish uniformity in the rate of interest paid on deferred tax claims ... it has the effect of circumscribing by statute the impact of the U.S. Supreme Court's decision in **Till v. SCS Credit Corp.**").

**Jones**, 368 B.R at 604.

This court agrees with Metro and **Jones** that section 511 requires the debtor's plan to apply the Tennessee statutory interest rate to Metro's claim to comply with section 1325(a)(5). Metro's allowed over*secured* claim, includes prepetition interest, costs, fees, charges, and penalties (as agreed by the parties), as well as pendency interest, fees, costs, and charges as allowed by section 506(b), but does not include the 6% penalty. Section 511 mandates that the debtor pay interest as provided by T.C.A. § 67-5-2010 (requiring 1% interest per calendar month) on Metro's allowed claim to provide Metro with the present value of the claim. The unambiguous reading of section 511 and T.C.A. § 67-5-2010 requires the debtor to pay Metro's allowed *secured* claim interest 1% per month (12% per annum), but not the additional 6% per annum penalty.

### 3. Impact of Claim Against Solvent Debtor

While the post-petition penalty portion of the claim is not entitled to secured treatment, it must nevertheless ultimately be paid because this debtor is solvent. **In re Dow Corning Corp.**, 456 F.3d 668 (6th Cir. 2006). As noted previously, the debtor is proposing a 100% plan, and her Summary of Schedules shows assets of $117,725 and liabilities of $16,627. Her current monthly income (Schedule I) exceeds her expenditures (Schedule J) on a monthly basis by more than 50%. The solvency of this debtor is not in question.

18

The Sixth Circuit in **In re Dow Corning Corp.**, 456 F.3d 668 (6th Cir. 2006) held that Congress intentionally limited the recovery of postpetition interest, fees, costs, and expenses to oversecured creditors by not providing for unsecured creditor's rights in section 506(b).  However, in the case of a solvent debtor, the court found:

> the fact that Congress would expressly provide for the recovery of interest by unsecured creditors is not surprising.  In the absence of such an explicit exception, an undersecured or wholly unsecured creditor would be unable to recover postpetition interest given § 502(b)'s general prohibition against the recovery of unmatured interest. **See** 11 U.S.C. § 502(b)(2).  Because there is no such general prohibition against the recovery of attorneys' fees, costs and expenses contained in § 502(b), there is no need for an explicit statutory exception allowing recovery against solvent debtors.

**Id.** at 681.

The Sixth Circuit ultimately concluded in **Dow Corning**, that unsecured creditors could receive fees, costs, and charges from a solvent debtor arising from agreement of the parties under section 502(b) or where such fees are valid under state law.  **Id.**  The Sixth Circuit joined "the body of cases" allowing such post-petition items to be recovered from a solvent estate.  **Id.** at 683.  The First Circuit held likewise in **Gencarelli v. UPS Capital Bus. Credit**, 501 F.3d 1, 5 (1st Cir. 2007) (finding unreasonable fees, costs, and charges not allowed priority under section 506(b) nonetheless allowed under section 502(b) as unsecured claims in the case of a solvent debtor).

Obviously, there is a significant technical difference between having a claim treated as secured versus unsecured.  However, where unsecured creditors are being paid 100%, the distinction is usually more theoretical than practical, potentially affecting the timing of payments but not the ultimate result.  Based on **Dow Corning**, and in light

of the solvency of the debtor, Metro's postpetition penalty is nevertheless allowed as an unsecured claim.

### III. Summary

Section 502(b) requires the court to allow Metro's claim "as of the date of filing." As of the date of filing, Metro's allowed claim included prepetition interest, fees, costs, charges, and penalties. The only additions Metro can make to this amount as an oversecured creditor are exclusively provided for in section 506(b). The law surrounding interaction of section 502(b) and section 506(b) when fees, costs, and charges are found to be unreasonable is not totally settled. However, generally only two exceptions allow a creditor to tack on any additional amounts to a claim allowed as of the date of the petition: (1) section 506(b) for the oversecured creditor, and (2) all creditors, secured or unsecured, in the unusual case where the debtor is solvent. **See In re Dow Corning Corp.**, 456 F.3d 668, 681 (6th Cir. 2006); **Gencarelli v. UPS Capital Bus. Credit**, 501 F.3d 1, 5 (1st Cir. 2007). Because the Court has found that section 506(b) is a self-contained list and does not include postpetition penalties, Metro's postpetition penalties are not prioritized as a secured claim. However, given the solvency of the Debtor, the penalty is nonetheless allowed as an unsecured claim.

For all the reasons cited here, the Court finds that Metro's objection to confirmation is hereby GRANTED IN PART and DENIED IN PART. The debtor's plan must provide for the statutory interest rate of 12% pursuant to section 511 and T.C.A. § 67-5-2010 on Metro's allowed oversecured claim. Metro is also allowed an unsecured claim for the penalties from the petition date through confirmation because of the solvency of this particular debtor. The Court instructs counsel for the debtor to prepare

an order not inconsistent with this Court's Memorandum within seven (7) days of entry

of the Memorandum.

This Order has Been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.